Next case is Donald Winkler v. Secretary of HHS, 2022-1960. Mr. Milmo, when you're ready. May it please the Court, Michael Milmo for Donald Winkler, petitioner in this case. Good morning, Your Honors. I don't think this is an exceptionally complicated case, but it may be a close case as to prong two of the Alton test. I would just remind the Court up front of this Court's mandatory language from the Alton case that says close cases are supposed to be resolved in favor of petitioner. I say it's not a complicated case because it involves really just one issue. Can a special master, you know, examine the case through the prism of C. Jejuni infection and not find that the petitioner actually suffered from that particular infection? But isn't the issue whether there is preponderant evidence that his injury was caused by the vaccines? I'm sorry, is there preponderant evidence? That the injury was caused by the vaccines. I think that Dr. Rinker provided substantial evidence that the vaccine at issues here caused his GBS, and the special master rejected that evidence based on her assumption, if you will, that Campylobacter can be associated with cases of GBS. Mr. Winkler had diarrhea. He had a very nonspecific form of preexisting damage here. There are all kinds of reasons for diarrhea. I mean, I'm sure that half the people in this room probably had diarrhea at some point in the last few months. We won't get into that. Thank you. But, you know, if the respondent cannot prove that the particular cause of the diarrhea and the vomiting was C. Jejuni infection, then the entire analysis of the special master has to even Dr. Chaudhry. I think this is an important point on page 98 of the transcript. Even Dr. Chaudhry says that antigen antibodies are specific. Diarrheal illnesses from C. Jejuni infection that triggers GBS cannot be equated with diarrheal illness from another gut infection or other species of Campylobacter, such as Campylobacter coli. The latter does not trigger GBS. So what you're saying is that the inadequacy of the analysis with respect to an alternative cause enables him to prevail even though he hasn't proved by preponderance of the evidence that the vaccine caused GBS. Well, I think the special master inappropriately used Campylobacter, which he didn't make any finding on as to whether he had it, in order to knock down Dr. Rinker's testimony concerning what was more likely. You know, she faults him for, you know, not being able to provide evidence, but he did provide evidence saying, hey, timing is important to me. Timing is important to my opinion. And then on page 32 of her decision, she says Dr. Rinker attempted to argue that the temporal association between vaccination and GBS onset favored the vaccines as the more likely cause. However, literature cited by Dr. Rinker notes that an incubation period with Campylobacter infections consistent with Dr. Witten's opinion and the literature cited by Dr. Witten and Chaudhry, taking into account the incubation period between infection and symptoms, onset would place the infection before or approximately the same day. So she knocked out his timing argument based on Campylobacter, which she never found that he actually had. I mean, the fact that her analysis revolves and incorporates the analysis of Campylobacter, you know, is very strong. I counted in the decision 84 places where she either used the term Campylobacter or C. jejuni infection. Secondly, she wants the reviewing court to know, because she must know that this case is a fairly close case, that there are only two terms, two medical terms that she wanted to define for the reviewing court. One was Guillain-Barre syndrome, which is what Mr. Winkler had, and the second is Campylobacter. I think if you look at the third piece of evidence that I would point you to or invite you to look at is her decision on pages 26 and 27 of the appendix, where she talks about Dr. Chaudhry, that's the respondent's expert opinion, as two-pronged too. The entire portion of Dr. Chaudhry's opinion deals with Campylobacter. I think the respondent's arguments necessarily have to fold, and so does the analysis of the special master. But we don't know whether he had Campylobacter infection or not, because she never made that finding, and I think that's legal error for her not to do that. Dr. Chaudhry Doesn't that just mean that an alternative cause was not proven? Dr. McKeon An alternative cause can't be proven in this case, nor can it be excluded in this case. The special master uses as a sword against Mr. Winkler the idea that no testing was done. Well, that's also a sword against the respondent's position, because Dr. Chaudhry can't prove that Campylobacter existed because no testing was done, but yet she only implies and enforces that rule against the petitioner. Dr. Chaudhry That's not the government's proof, is it? Dr. McKeon Well, that's not entirely clear. I want to point at the court, invite the court's attention again to what I think is, besides Dr. Chaudhry's discussion on page 98, I think the other most important part of this appendix is the special master's rule 5 order, which is at appendix 103 and 104. It's a pretty short order, but she discussed the case at length with counsel as part of the rule 5. As you probably know, rule 5 is the part of the vaccine program where the special masters give you their impressions of the case after the expert reports are in, and after the parties have established their positions. She says right at the bottom, because there are three potential causes in this case, and based on the medical evidence, the undersigned finds it difficult, if not impossible, to discern which cause is most likely. The undersigned instructed the parties to look at Goring. Goring is a case that she herself decided, the same special master decided, in which she said that it's not entirely clear who has the burden of proof. When there are multiple cases, she looked at restatement second of torts, which is the same case, I might add, that the same place that this court's line of causation cases under shy face comes from, is the restatement second. She says that the respondent has the responsibility of distinguishing when there are multiple causes. It's the tortfeasor who has the responsibility, the respondent, to prove what is more likely. What changed, I think the court, I would just ask the court to define what changed between her rule five order of April 2nd and her decision in the case in the following year. I think what changed is she kind of put her thumb on the scale of Campylobacter. That would explain everything, but with all due respect, she adopted Dr. Chaudhry's analysis. Dr. Chaudhry's analysis is not very scientific. We know that he has GBS, and we know that he has diarrhea, and we know that Campylobacter can be a cause of diarrhea, one of many causes of diarrhea, and that Campylobacter can be associated with really clear on page 32. Again, she completely knocks out the petitioner's argument by saying, by applying a lens of Campylobacter, but never finding that he had Campylobacter. It isn't what the special master is saying, not therefore he had Campylobacter, but therefore you, plaintiff, have not met your burden to prove by a preponderance of the evidence that the vaccine caused your problems. I think it's just the inverse of that. I think she's saying that we can't prove prong two because we can't prove he didn't have Campylobacter. Campylobacter is something that neither side can prove because it was never tested for. If it was so important to her decision, I would just say that she needed to make a finding on it. I don't think we'd be here today, frankly, your honor, if she had included two or three paragraphs about, I find that he had Campylobacter or he didn't have Campylobacter. Can you help me? The government cites in its brief the WC case of ours, which says, according to them, merely demonstrating a plausible or possible causal link is insufficient to meet your preponderance of the evidence standard in this context. You didn't respond to that in your great brief. What's the response? Well, I think the response is that the special master necessarily conflated Campylobacter and used that to discredit the petitioner's case. I mean, we have prong one. We have prong three. On prong two, again, neither the special master nor Dr. Chaudhry showed their work. It's just an analysis that this must be the case without any specific findings. I might just add, Dr. Chaudhry's opinion about the presence of Campylobacter was hotly contested. It's virtually impossible to decide this case without making a finding, one way or the other. I think the answer to your question is you can't just raise what's possible. That's true, but you can't also knock out the petitioner's evidence of what's possible using something that you don't know whether Mr. Winkler had in the first place or not. Counsel, you're into your rebuttal time? Okay, I'll reserve the rest of my time. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Nina Wren, and I represent the Respondent and Secretary of Health and Human Services. This isn't a closed case. A petitioner disagrees with a special master's weighing all the evidence, and her holding petitioner accountable to his burden of explaining why the specific circumstances of his case, more likely than not, aligned with the scientific explanations that he provided. Petitioner is asking this Court to embargo evidence that he himself introduced in direct conflict with this Court's holding in stone. Petitioner cannot fault the special master or the Court of Federal Claims for considering arguments advanced by their own expert, Dr. Winkler, who conceded that he could not distinguish between vaccination or the diarrheal illness alone was responsible for Petitioner's GBS. And he himself introduced evidence on C. jejuni's association with GBS. And although Dr. Winkler ultimately disagreed that C. jejuni was the responsible pathogen, the special master considered both sides and relied on the whole record, as she was required to do. And she correctly determined that the petitioner ultimately never produced enough evidence for a primary infection case. And I'd just like to address a couple points made by Petitioner's counsel during oral argument. Much of, I think, the points that Petitioner's counsel raised goes back to how the special master weighed the evidence between Petitioner's expert and respondent's experts. And I think it's clear looking at the expert reports and looking at how special master below reviewed the evidence that although C. jejuni was used by both Petitioner's counsel, Petitioner's expert, and referenced by Dr. Witten, the respondent's expert, and Dr. Chaudhry, all the experts at the end of the agreed that gastrointestinal infection is scientifically associated with GBS. It does not have to be C. jejuni, and some of the articles they cite show the various other pathogens that have been connected with GBS as well. So both sides agree that GI is sort of the and the special master correctly determined that Petitioner's counsel just didn't adequately account for it when making their case. With respect to the reference to the Rule 5 order, the vaccine rules makes it very clear that they're tentative preliminary findings. So they're tentative, they're preliminary. She was not bound to them, just as she was not bound to her decision that she referenced Goring, which is a ruling on entitlement that she issued. It's not binding on her, it's non-precedential. She had no obligation to write her decision the same way that her tentative findings came out. It looks to me like Winkler made a strong pre-metastatic case, and the government did not come back and counter it, and the special master didn't make a finding on the C. j. So why isn't that the end of the case? They were asking for it to go back for a remand to be done. Why isn't it that the government loses in this case? Why would they get a do-over? I would disagree that Petitioner's counsel made made a permanent fashion case under, for example, Eltham 1. Let's assume, I mean I believe they did, and I understand your argument. So my question is why isn't that the end of the case as opposed to having to go back and give the government another shot at it? I don't think it's necessary for it to go back on remand because whether or not special master, the special master below Dorsey, made a fact finding on the presence of C. juni as the pathogen, it doesn't take care of the issue of the fact that Petitioner had a clinical presentation that was very similar to a clinical presentation of a G.I. infection such that his was a G.I. infection. I think the characterization of what happened to Petitioner as diarrhea that could have happened to anyone, happens all the time, is inaccurate in this case because that was not the only symptom. It was this constellation of symptoms that concerned his treating providers and also concerned respondents experts, and that included nausea, vomiting, bloody stools, headaches. There's a whole range of symptoms at play here. So even if the special master made a fact finding on C. juni, I mean if she made, if she said it was indeed C. juni, I think the case would have been over for Petitioner. If she said I don't think it was C. juni, the record evidence is so clear that there was nevertheless this G.I. infection, and that is still sufficient for her to find that Petitioner did not satisfy the preponderance of the evidence standard in meeting their case. So I want to make sure I understood that answer to Judge Merritt's question. I understood him to be saying if we find that there was a prima facie case, the options at that point are either the government loses, that we reverse, or we send it back for further proceedings. You said no need to remand. Does that mean we should reverse if we find there was a prima facie case? If you do find in this case that they did satisfy their prima facie burden, then I think, I mean I think then we will look at the evidence under the factor unrelated. You would have a chance to rebut in the ordinary course, right? Correct, yes. So are you asking for that chance if that's the decision we reach, or should we just end the case if we find they found a prima facie case? I think if you find that, if your honors find that they did satisfy their prima facie case, then yes, respondent I think would have the legal right to put forward the alternate cause factors unrelated argument. So we would be asking for a remand. Why wasn't that done in the first place? I think the evidence was produced. I don't think, I think the case law doesn't necessarily require you to categorize evidence in these strict boxes, and that they can be considered as part of petitioner's ability to make their prima facie case, which in their case, they were the ones who made the attempt to eliminate this, I mean to say that it wasn't a caesarean section. And then also, we could use that evidence as a factors unrelated defense. Is a prima facie case a preponderance? Yes, it is, your honor. Can I ask you just about jurisdiction? You have this footnote four at page 80 of your brief, which suggests that the notice of appeal was late, but doesn't come right out and say it was late, and you never say we lack jurisdiction. So what is the government's view? Do we have jurisdiction or not? Our position is that we defer to the court on this answer. You defer to the court? Defer to the court. I don't believe I have authority to make any further arguments on that. It's clear that you did not argue expressly that we lack jurisdiction. Is that fair? That's fair. Okay. If there are no further questions, I would just ask that the court affirm the decisions below of the Special Master and the Court of Federal Claims. Thank you. Thank you, Ms. Wren. Mr. Milmo. Thank you, your honors. Again, on the issue of the diarrhea, diarrhea has a lot of causes. Dr. Rinker specifically talks about the most common form of diarrhea is caused by eating something bad or drinking something that's tainted. For the most common form of diarrhea, respondents expert and the court to extrapolate from that, that because he has GBS and diarrhea, then it has to be Campylobacter, that's not appropriate, especially without making the finding. Again, if there had been a finding here one way or the other that said for the following reasons, I find that the person that Mr. Winkler had or didn't have Campylobacter infection, that would have ended the case. One way or the other, we would have known. Did the government give the master sufficient grounds to make that finding? Did the petitioner give? Government. Did the government? I don't think so because it's based on speculation. It's based on that backwards syllogism that if you have the answer, then you can show your work below. That's not appropriate. I don't think the government gave the special master what she needed to make that finding. If they didn't give it to her and she didn't find it, then why isn't that the end of the case in your favor? It could be. If the court wants to find that, that's just fine. You asked for a remand. What is your position on a remand? We wish we had had a hearing in this case. I just want to explain that very briefly. The reason we didn't have a hearing is because after this Rule 5 conference, the court told us to try to settle the case, which we couldn't do. The government wasn't interested in settling the case. They wanted to move forward. The courts issued an order saying in June of 2020 saying, in 2021, I'll take under consideration hearing dates for 2022 at the earliest. We didn't do that. I think a hearing, having Dr. Chaudhry and Dr. Rinker discuss the two issues that are at the heart of this case, did Mr. Winkler have Campylobacter? What form, what subtype did he suffer from? One which is not consistent with Campylobacter and one that is? That's the chance. This is a search for the truth. We're trying to get to the real answers here, and the real answers require the court to reopen this and to look at it. If the court wants to find that we went on the record below, then even better. I do think the search of the truth requires the special master to do her job. She didn't want to get into the subtype. She says that on page two. She didn't want to get into Campylobacter, but she used Campylobacter as the reason to reject the petitioner's evidence, and that's inappropriate. I appreciate your candor on the remand. I had understood you also thought you needed a remand because the special master did not make a finding on alpha factor one. She simply assumed that you could have met your burden, but I don't think she actually made a finding. I agree with that. I don't think she actually made that finding. I think she says it's likely. You would need a remand for that reason as well. I agree. My friend talked about the treating physicians who say that the treating physicians were concerned about the diarrhea. The treating physicians also note the vaccine and a number of their histories saying the person just got a vaccine. That's why the more development. Counsel, as you see, your time is up. Do you want to finish your thought? Well, I would just finish the thought that we disagree strongly that even with the finding, if the special master had made a finding one way or another, that the petitioner still wins, I think that's impossible. Thank you. Thank you, counsel. The case is submitted. Thank you.